IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| BILLY LEE BROWN, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:23-cv-00084-O-BP |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Billy Lee Brown ("Brown") applied for Title II Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("SSA"). The Commissioner denied his application, deciding that he was not disabled. Brown appealed, but the Social Security Appeals Council ("AC") rejected his request for review. There is no reversible error in the legal standards that the Administrative Law Judge ("ALJ") applied, and substantial evidence supports his determination that Brown was not disabled. Accordingly, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's denial of Brown's application.

**I.   BACKGROUND**

Brown applied for DIB on April 22, 2020 (Tr. 269-70) and SSI on May 8, 2020. Soc. Sec. Admin. R. (hereinafter "Tr.") ECF No. 7-1 at 269-75.  The record also reflects protective filing dates of April 20, 2020 for DIB and April 10, 2020 for SSI. Tr. 20, 67-68. Brown alleged disability beginning on April 2, 2020 due to the combined effects of arthritis, anxiety/depression, bipolar disorder, panic attacks, post-traumatic stress disorder, hypertension, radiculopathy, spinal stenosis,

and nerve root compression. Tr. 324. The Commissioner denied his application initially and upon reconsideration. Tr. 20, 121-26, 128-33.

Brown challenged the Commissioner's denial in a hearing before an ALJ, who affirmed the Commissioner's decision. Tr. 42-66, 147-48, 20-27. Brown appealed the decision to the AC, which denied review. Tr. 6-8. "[T]he Commissioner's decision does not become final until after the [AC] makes its decision denying the claimant's request for review." *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). Brown then filed this civil action seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). ECF No. 1.

## II.   STANDARD OF REVIEW

Titles II and XVI of the SSA govern the DIB program and SSI programs, respectively. *See* 42 U.S.C. §§ 401-434; §§1381-1383f. Claimants seeking benefits under either program must prove that they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988) (stating the "relevant law and regulations governing the determination of disability under a claim for [DIB] are identical to those governing the determination under a claim for [SSI]"). A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).

First, the claimant must not be presently doing any substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). SGA is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* §§ 404.1572, 416.972. Second, the claimant must have a

severe impairment or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1).

Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers his past relevant work ("PRW"). *See id.* §§ 404.1520(a)(4), (e)-(f), 416.920(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). PRW means work the claimant has done "within the past 15 years, that was [SGA], and that lasted long enough for [the claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his PRW considering his RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th

Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.   ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process. Tr. 22-27. First, the ALJ found that Brown had not engaged in SGA since his alleged onset date of April 2, 2020. *Id*. at 23.

Second, he found two severe impairments: degenerative disc disease and arthritis of the knees. *Id*. The ALJ found that Brown's "medically determinable mental impairments of anxiety and depression, considered singly and in combination, [did] not cause more than minimal limitation in [his] ability to perform basic mental work activities and [were] therefore [non-severe]." *Id*. The ALJ considered the "paragraph B" criteria in making this determination. *Id*. at 23-24. He clarified that the limitations identified under "paragraph B" criteria were not an RFC assessment, and that "[t]he mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process require[d] a more detailed assessment." *Id*. at 24. However, the ALJ did not

4

address Brown's mental limitations in the course of making an RFC determination or at step 4, and the ALJ omitted step 5 because he found no disability at step 4. *Id*. at 25-27.

Third, the ALJ identified no impairment or combination of impairments that qualified under the federal regulatory list. Tr. 24. He explained that "[t]he medical evidence indicate[d] that [Brown] ha[d] impairments that [were] 'severe' within the meaning of the Regulations, but not 'severe' enough to meet or medically equal the appropriate medical findings contained in 20 CFR Part 404 and/or 416, Appendix 1 to Subpart P." *Id*.

The ALJ then assessed Brown's RFC, finding he was able to "perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)." *Id*. at 25. In making this determination, the ALJ stated that he "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." *Id*. However, the ALJ's RFC analysis did not mention Brown's mental health symptoms. *Id*. at 25-26.

At step four, the ALJ determined that Brown could perform PRW, specifically as a production assembler and a fast-food worker, explaining that he had held those jobs "long enough to learn them and at [SGA], within the past 15 years." *Id.* at 26. However, at the hearing, the vocational expert ("VE") stated that one of Brown's jobs was "composite between the forklift operator, which is medium work" and a production assembler, classified as light work. *Id*. at 60. In his opinion following the hearing, the ALJ did not address the composite status of Brown's past work but found that Brown could perform his past work "as actually and generally performed." *Id*. The ALJ's PRW determination led him to conclude that Brown was not disabled under §§ 216(i) and 223(d) of the SSA. *Id*. at 26-27. Since the ALJ determined at step four that Brown was not disabled, the ALJ did not proceed to step five.

Brown asserts four grounds for reversal and remand. First, in a footnote, Brown argues that the ALJ erred in his analysis of Brown's composite production assembler/forklift operator job at WL Plastics. ECF No. 11 at 4. Second, he argues that his work at WL Plastics did not qualify as PRW "because it was not performed within the last 15 years of adjudication, as required by the regulations." *Id*. at 4-5. Third, he claims that his work at Pizza Hut paid him less than the minimum required to count as SGA. *Id*. at 5-6. Fourth, he argues that the ALJ failed to consider his mental limitations in the RFC, though these limitations were credibly established. *Id*. at 8.

### A. The ALJ did not commit reversible error when analyzing Brown's composite job.

Brown argues that because he could not "perform the forklift aspect of his past work for WL Plastics based on the ALJ's own RFC, the ALJ was precluded from relying on his ability to perform the other part of that occupation at step four." *Id*. at 4. He also argues that the ALJ could only rely on his ability to perform composite work "as actually performed" rather than "as generally performed." *Id*.

In its Program Operations Manual System ("POMS"), the Social Security Administration ("Administration") explains that "[c]omposite jobs have significant elements of two or more occupations and as such, have no counterpart in the DOT." *POMS DI 25005.020 Past Relevant Work (PRW) as the Claimant Performed It*, SOCIAL SECURITY (Apr. 13, 2017) (TN 9 (06-23)), https://perma.cc/5MEF-U99R (last accessed Apr. 26, 2024). Because there is no DOT counterpart for a composite job, the Administration instructs its staff, "do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'" *Id*. Furthermore, the Administration instructs, "When comparing the claimant's RFC to a composite job as the claimant performed it, find the claimant capable of performing the composite job only if he or she can perform all parts of the job." *Id*. Brown's argument echoes these points. ECF No. 11 at 4.

6

The Court, however, applies prior case law on this topic, not solely the POMS. *See Bettery v. Comm'r of Soc. Sec.*, No. 14-03321, 2015 WL 4742296, at *8 n.9 (W.D. La. Aug. 10, 2015) ("While POMS guidelines do not have the force and effect of law, they do have some value, effect, and persuasive force.") (cleaned up). "The Fifth Circuit has not specifically addressed . . . whether it is proper to segregate the different jobs of a composite job to determine whether a claimant has the RFC to return to past relevant work doing one of those jobs." *Holland v. Colvin*, No. 3:14–CV–2964–K–BH, 2015 WL 5437727, at *12 (N.D. Tex. Aug. 31, 2015), *rec. adopted*, 2015 WL 5439051 (Sept. 15, 2015), *aff'd* 652 F. App'x 266 (5th Cir. 2016).

This Court, however, has found it proper for an ALJ to "segregate portions of a former job in determining whether a claimant can perform [PRW]," and to consider the composite job "as that job was generally performed in the national economy." *Id*. at *13; *see also Morfin v. Saul*, No. 4:20-CV-814-P, 2021 WL 3533460, at *4 (N.D. Tex. June 8, 2021) (same), *rec. adopted*, 2021 WL 2820445 (July 7, 2021); *Vanhuss v. Berryhill*, No. 3:17-cv-1327-M-BN, 2018 WL 2335467, at *5 (N.D. Tex. Apr. 25, 2018) (same), *rec. adopted,* 2018 WL 2329310 (May 23, 2018); *Stinnett v. Berryhill*, No. 4:16-CV-00252-Y-BL, 2017 WL 1403660, at *4 (N.D. Tex. March 31, 2017) ("[M]erely showing that the RFC is incompatible with his specific previous employment [in a composite job] as actually performed is not sufficient to carry his burden of proof."), *rec. adopted*, 2017 WL 1382936 (N.D. Tex. Apr. 18, 2017); *cf. Prokinyer P. v. Kijakazi*, No. 5:20-CV-245-H-BQ, 2022 WL 565929, at *7 (N.D. Tex. Feb. 3, 2022) (citing *Holland*), *rec. adopted*, 2022 WL 562899 (Feb. 24, 2022). *But see Deborah T. v. Saul*, No. 4:18-cv-00765-O-BP, 2019 WL 5025951, at *4 (N.D. Tex. Sept. 6, 2019) ("The ALJ committed legal error because he did not properly analyze Plaintiff's PRW, a composite job, 'as actually performed' instead of 'as generally performed in the national economy.'"), *rec. adopted*, 2019 WL 4667515 (Sept. 25, 2019),

7

*appealed after remand,* 2022 WL 3006784 (Jul. 12, 2022), *rec. adopted*, 2022 WL 2992877 (Jul. 27, 2022); *Gunter v. Comm'r of Soc. Sec. Admin.*, No. 4:21-CV-783-BJ, 2022 WL 3219803, at *4 (N.D. Tex. Aug. 9, 2022) (same).

Brown does not dispute that substantial evidence in the record supports the ALJ's determination that Brown retains the RFC to return to light work as a production assembler. Therefore, even though Brown may not be able to perform the forklift operator component of his prior job at WL Plastics because it requires medium work, because he retains the RFC to perform the production assembler component, the ALJ did not err when finding that his WL Plastics job constituted PRW. *See also Behne v. Colvin*, No. 2:13–CV–086, 2014 WL 4802451, at *5 (N.D. Tex. Sept. 26, 2014) ("Even if plaintiff was required to perform both jobs, there is nothing in the relation of the duties of one job to the other that makes them indefinable or inseparable. Consequently, the ALJ did not err by holding that plaintiff was capable of performing her past relevant work as an administrative assistant."). Remand is not required on this basis.

**B.    Brown's work as a production assembler occurred within the relevant time period for the purposes of PRW.**

Regulations explain that PRW generally must have been done "within the past 15 years." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). According to the Commissioner's ruling, "[w]hen deciding whether a claimant is disabled under title II or title XVI, the 15-year period is generally the 15 years prior to the time of adjudication at the initial, reconsideration or higher appellate level." Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *2.

"Adjudication" means "the application of the law to the facts and an authoritative declaration of the result (i.e. a signed determination or decision)." *POMS GN 01010.110 Partial Adjudication,* SOCIAL SECURITY (June 22, 2023) (TN 58 (06-23)), https://perma.cc/J46F-ACPE (last accessed April 24, 2024). "Consider a claim adjudicated when an employee with adjudicative

8

authority delegated from the [Commissioner] completes the appropriate electronic adjudicative decision screen, the equivalent direct input screen, or, signs a paper adjudicative form." *Id.* "The adjudication date is the date the adjudicator signs the adjudicative screen or form authorizing the determination or decision after considering all eligibility and entitlement evidence." *POMS GN 01010.001 Adjudicative Policy and Standards*, SOCIAL SECURITY (July 31, 2003) (TN 75 (07-23)), https://perma.cc/J6NB-RAXK (last accessed April 24, 2024).

As for what counts as the "initial, reconsideration, or higher level," "[o]nce processed, initial determinations are subject to appeal (e.g., reconsideration, administrative law judge (ALJ), appeals council (AC), or U.S. Court)." *Id.* "[T]he initial determination and each level of appeal require a separate adjudication." *Id.* "The date of adjudication does not freeze at the initial determination but is the date of determination or decision at any level of review." *POMS DI 25001.001 Medical and Vocational Quick Reference Guide*, SOCIAL SECURITY (July 11, 2022) (TN 17 (01-23)), https://perma.cc/96WL-N958 (last accessed April 24, 2024).

However, the Commissioner may look beyond the fifteen-year period in certain circumstances. For instance, if a claimant's work during the period was "arduous and unskilled" and the claim had "very little education," the entirety of the claimant's work history could be considered. 20 C.F.R § 416.965(b). "[I]n some cases work performed prior to the 15-year period may be considered as relevant when a continuity of skills, knowledge, and processes can be established between such work and the individual's more recent occupations." SSR 82-62, 1982 WL 31386, at *2. In *Bowman v. Heckler*, the Fifth Circuit looked back twenty years because it was realistic that the skills involved in that job would not have changed in twenty years. 706 F.2d 564, 567 (5th Cir. 1983).

The ALJ issued his findings in February 2023 but considered information about Brown's 2007 work as a production assembler in determining his PRW. ECF No. 11 at 5, Tr. 26, 46-47. Brown argues that "[s]ince the ALJ did not issue his final decision until February 2023, [his] work [as a production assembler] was not within 15 years of adjudication of the claim and did not meet the requirements for past relevant work." ECF No. 11 at 5. The Commissioner responds that "[c]onsistent with SSR 82-62, [Brown's PRW] was considered when his application for benefits was denied at the initial and reconsideration levels" in 2020. ECF No. 12 at 5; *see also* SSR 82-62, at *2 ("the 15-year period is generally the 15 years prior to the time of adjudication at the initial, reconsideration or higher appellate level."). Brown replies, quoting administrative guidance, that "[t]he date of adjudication does not freeze at the initial determination but is the date of determination or decision at any level of review." ECF No. 13 at 1.

Prevailing authority indicates that this issue should be resolved in favor of the Commissioner. The Fifth Circuit has held recently that for DIB and SSI cases, "[PRW] is [SGA] that the claimant performed within fifteen years prior to the alleged onset date." *Wilson v. Kijakazi*, No. 21-60663, 2022 WL 2339471, at *3 (5th Cir. June 29, 2022); *see also Bayer v. Colvin,* 557 F. App'x 280, 284 n.1 (5th Cir. 2014) ("In the fifteen years prior to his alleged disability onset date, Bayer had work experience as an assistant manager…"). Therefore, because Brown's 2007 work as a production assembler took place within fifteen years prior to his April 2, 2020 onset date, and because no party has argued that the fifteen-year rule should not apply, this work is PRW. Remand is not required on this basis.

### C. Even if Brown's fast-food work was not SGA, this is harmless error.

"[A] rebuttable presumption of non-SGA arises when a claimant's earnings fall below the earnings guidelines for SGA contained in §§ 404.1574(b)(2) and 416.974(b)(2)." *Copeland v.*

10

*Colvin*, 771 F.3d 920, 925, 927 (5th Cir. 2014). Failure to apply this presumption is grounds for reversal and remand. *Id*. at 927.

To calculate whether a claimant's earnings fall below SGA guidelines, "[e]arnings are generally averaged over the actual period of time in which work was performed," with an exception for seasonal work. *SSR 83-35, Titles II and XVI: Averaging of Earnings in Determining Whether Work is Substantial Gainful Activity,* SOCIAL SECURITY, https://perma.cc/DG2T-JUY3, (PPS-109) (last accessed April 24, 2024). Thus, if a claimant worked for eight months in a calendar year, the Commissioner would divide his total income by eight rather than twelve to calculate average monthly earnings. *Id*. The Court has applied this averaging method in multiple cases. *See Diana M. v. Comm'r of Social Security*, No. 5:19-CV-258-BQ, 2021 WL 3639751, at *4-5 (N.D. Tex. July 30, 2021), *rec. adopted*, 2021 WL 3633893 (N.D. Tex. Aug. 17, 2021); *Bryant P. v. Comm'r of Soc. Sec. Admin.*, No. 3:19-cv-402-L-BK, 2020 WL 1326705, at *3 (N.D. Tex. Mar. 3, 2020), *rec. adopted*, 2020 WL 1326274 (N.D. Tex. Mar. 20, 2020); *Craven v. Berryhill*, 4:18-cv-00008-Y-BP, 2018 WL 4658530, at *7 (N.D. Tex. Sept. 11, 2018), *rec. adopted*, 2018 WL 4637285 (N.D. Tex. Sept. 27, 2018).

Brown argues that his "employment as a [fast-food] worker never reached the SGA level, meaning it also did not qualify as [PRW]." ECF No. 11 at 5. Brown asserts further that his earnings at Pizza Hut in 2017, 2018, and 2019 were well below $1170 per month in 2017 and $1180 per month in 2018 and 2019, the SGA amounts for those years. *Id*. at 6; *POMS DI 10501.015 Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity*, SOCIAL SECURITY (Oct. 18, 2023) (TN 18 (10-23)), https://perma.cc/M8YN-JL97 (last assessed April 24, 2024). He calculates that his monthly earnings for 2017 were approximately $260 measured on a twelve-month basis and $521 based on a six-month basis. ECF No. 11 at 5-6. He similarly

11

calculates that his earnings for 2018 were approximately $445 per month, and that his earnings for 2019 were less than $90 per month. ECF No. 11 at 6.

The Commissioner responds by calculating Brown's earnings differently and by emphasizing that "the use of the terms 'generally,' 'ordinarily,' and 'may' in [relevant] regulations indicate that earnings alone are not conclusive to the determination of whether work is SGA." ECF No. 12 at 7. First, the Commissioner calculates Brown's earnings on a quarterly basis, asserting that he earned $3,124.73 in the fourth quarter of 2017 ($1,041.57 per month) and $5,342.30 in the first quarter of 2018 ($1,780.76 per month). *Id.* at 6. Under these calculations, Brown met the SGA level in 2018 but not in 2017. The Commissioner does not appear to contest Brown's assertion that he did not engage in SGA at Pizza Hut in 2019.

Second, the Commissioner notes that "[e]arnings are only one possible consideration for determining whether a job constitutes SGA." *Id*. at 7. He explains that while the Administration generally "first looks at a person's earnings to determine whether work activity constituted SGA," this is not conclusive, particularly given that "the regulations start with definitions of SGA that do not mention or require any specific evidence of earnings." *Id*. The Commissioner then provides examples of such definitions, such as "work activity that you do for pay or profit…" *Id*.; *see also* 20 CFR §§ 404.1572(b), 416.972(b). However, the Commissioner does not explain why the Court should still consider Brown's Pizza Hut work to be SGA even if it does not meet the minimum earnings requirements, and accordingly, the Commissioner has not rebutted the presumption mentioned in *Copeland*. 771 F.3d at 925, 927.

Furthermore, Brown correctly notes in reply that the Commissioner has provided no evidence to suggest that the 2017 and 2018 figures in the Detail Earnings Query ("DEQY") represent quarterly earnings rather than annual earnings. ECF No. 13 at 4. Available guidance

12

indicates that the DEQY earnings figures are annual rather than quarterly, since the guidance instructs staff to "[m]atch the claimant's job information in forms and evidence with: [t]he yearly earnings listed on the query…" *POMS DI 22515.020 Resolving Insufficient Vocational Evidence using a Detail Earnings Query (DEQY) or a Summary Earnings Query (SEQY)*, SOCIAL SECURITY (Nov. 21, 2018) (TN 7 (01-20)), https://perma.cc/L4CQ-2U8J (last accessed April 24, 2024). Calculated on an annual basis rather than a quarterly basis, Brown's earnings fall well below the SGA amounts for 2017-19, and the Commissioner has provided no reason to look beyond earnings when determining whether Brown's work at Pizza Hut was SGA. Therefore, the ALJ erred when considering this work to be SGA.

But even so, this amounts to only harmless error, since Brown also had PRW as a production assembler within fifteen years before the onset date. "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

### D. The Fifth Circuit's admonishment in *Carey v. Apfel* does not determine the instant case.

The Commissioner argues that Brown cannot challenge the ALJ's step four findings that his work as a production assembler and fast-food worker was PRW because he did not assert this argument before the ALJ. ECF No. 12 at 8, citing *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). In *Carey*, the Fifth Circuit admonished that

> claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

13

*Id*. at 146-47. Brown responds that he could not have objected at the hearing since the ALJ first explained which occupations he was relying upon in his decision issued more than four months after the hearing. ECF No. 13 at 5. Brown also argues that *Carey* applies to situations in which the VE's testimony at the hearing conflicts with the Dictionary of Occupational Titles ("DOT"), which is not at issue here. *Id*. at 6; *Camp v. Astrue*, No. 4:11–CV–00866–Y, 2012 WL 6931704, at *11 n.12 (N.D. Tex. Dec. 12, 2012), *rec. adopted*, 2013 WL 300919 (N.D. Tex. Jan 25, 2013).

The Court previously has indicated that *Carey* typically only applies where there is a conflict between the testimony of a VE and the DOT. *Camp,* 2012 WL 6931704, at *11 n.12; *Homer v. Astrue*, No. 4:10-CV-081-Y, 2011 WL 824690, at *8 (N.D. Tex. Feb. 17, 2011) ("In *Carey,* the Fifth Circuit discussed situations in which there is an implied or indirect conflict between the VE's testimony and the *DOT*. Whether the identified past relevant work qualifies as SGA is not an issue of conflict between VE testimony and the *DOT*."), *rec. adopted*, 2011 WL 781887 (N.D. Tex. Mar. 7, 2011).

However, the Court has applied the admonishment in *Carey* to a few situations that do not strictly involve a conflict between VE testimony and the DOT. For example, the Court applied it to explain that a claimant should have raised concerns at the hearing if the claimant took issue with hypothetical questions the ALJ asked to the VE for the purpose of making an RFC determination. *See, e.g.*, *Caulder v. Comm. of Soc. Sec.*, No. 7:22-cv-00127-O-BP, 2023 WL 4915069, at *5 (N.D. Tex. May 23, 2023), *rec. adopted*, 2023 WL 4923960 (Aug. 1, 2023); *Wilson v. Saul*, No. 4:20-cv-00319-O-BP, 2021 WL 1523905, at *7 (N.D. Tex. Jan. 22, 2021), *rec. adopted*, 2021 WL 1523905 (Mar. 16, 2021); *Case v. Colvin*, No. 7:13–CV–00011–BL, 2014 WL 4386736, at *11 (N.D. Tex. Sept. 4, 2014); *White v. Astrue*, No. 4:08–CV–415–Y, 2009 WL 763064, at *13 (N.D. Tex. Mar. 23, 2009).

Likewise, the Court also has referenced *Carey* in the context of PRW, potentially creating some tension with *Homer*. *Caperton v. Berryhill*, No. 7:17-cv-00126-O-BP, 2018 WL 1899306, at *6 (N.D. Tex. Apr. 19, 2018) ("[The claimant] had the ability to provide contrary evidence regarding her [PRW] at any stage of this process and did not do so. Additionally, Caperton had the opportunity at the hearing to object to any mischaracterization by the VE, but did not do so."); *Abusaad v. Kijakazi*, No. 3:22-CV-1753-K-BH, 2023 WL 4494761, at *7 (N.D. Tex. June 27, 2023), *rec. adopted*, 2023 WL 4497268 (N.D. Tex. Jul. 12, 2023); *Bryant P. v. Comm'r. of Soc. Sec. Admin.*, No. 3:19-CV-402-L-BK, 2020 WL 1326705, at *4 (N.D. Tex. Mar. 3, 2020), *rec. adopted*, 2020 WL 1326274 (N.D. Tex. Mar. 20, 2020); *Gore v. Astrue*, No. 4:09–CV–095–A, 2020 WL 4053639, at *6 (N.D. Tex. Sept. 15, 2010), *rec. adopted*, 2010 WL 4053563 (N.D. Tex. Oct. 13, 2010).

Ultimately, however, the Court need not resolve the issue of how broadly to apply *Carey*. Regardless of its breadth, the Commissioner still would prevail on the PRW issues because Brown's work as a production assembler occurred within 15 years before his alleged disability onset date.

### E. The ALJ's failure to consider non-severe mental impairments in determining Brown's RFC is not grounds for reversal.

Brown argues that "it is indisputable that an ALJ's RFC finding must include all of the limitations he has found to be supported by the evidence of record," that the ALJ found that Brown had non-severe mental limitations, but that the ALJ's RFC determination did not address those limitations. ECF No. 11 at 8-9. Instead, the ALJ only addressed Brown's physical limitations. *Id.* at 11. Brown emphasizes that "even non-severe impairments must be accounted for in the RFC" and noted that "a mild limitation is distinct from no limitation whatsoever." *Id.* at 10, 11. According to Brown, the ALJ's failure to address Brown's mental limitations is "a harmful error

15

because the ALJ provided no basis for finding that [ ] Brown could perform a full range of light work in spite of his proven mental limitations." *Id*. at 12.

The Commissioner responds that Brown's non-severe mental limitations do not substantially affect his ability to work. ECF No. 12 at 9. The Commissioner also argues that a finding of mental limitations at step two is only relevant to steps two and three rather than to the RFC assessment. *Id*. at 10, 12. Furthermore, the Commissioner argues that even if Brown's anxiety and depression were severe, any error committed by the ALJ would be harmless. *Id*. at 12.

In general, "*all* relevant evidence in the case record" should be considered when making an RFC determination, and even non-severe impairments should be considered." *Jeansonne v. Saul*, 855 F. App'x 193, 198 (5th Cir. 2021) (emphasis in original). However, the Fifth Circuit has explained that the ALJ must consider non-severe mental impairments in the RFC determination only when evidence supports a finding that the impairments significantly affect a claimant's ability to work. *Id.* at 197-98; *see also Silvio v. Saul*, No. 20-381-BAJ-RLB, 2021 WL 4498991, at *5 (M.D. La. Aug. 18, 2021) (emphasis in original), *rec. adopted,* 2021 WL 4497485 (M.D. La. Sept. 30, 2021) (when mild mental limitations did not significantly affect claimant's ability to work at step two, no error in not considering those limitations at step five); *Murray v. Saul*, No. 1:20-CV-0800-SH, 2021 WL 3721447, at *5 (W.D. Tex. Aug. 23, 2021) (no error in not considering non-severe limitations that did not affect ability to work in determining RFC); *Chapelle v. Kijakazi*, No. 6:22-CV-05296, 2023 WL 6845862, at *3 (W.D. La. Oct. 16, 2023) (same); *Sumrall v. Kijakazi*, No. 22-2622, 2023 WL 4498520, at *10 (E.D. La. June 9, 2023) (same), *rec. adopted*, 2023 WL 4492421 (Jul. 12, 2023).

However, the courts are not unanimous in so holding. *See Melanie M. v. Soc. Sec. Admin*, No. 3:21-CV-36-S-BK, 2022 WL 3349231, at *3 (N.D. Tex. July 20, 2022), *rec. adopted*, 2022

WL 3349155 (N.D. Tex. Aug. 11, 2022). Other courts mention *Jeansonne* but decide the case on the grounds of harmless error. *Claudio v. Comm. of Soc. Sec.*, No. 4:23-cv-108-BP, 2023 WL 4748218, at *5 (N.D. Tex. July 25, 2023) (harmless error); *see also Tamara G. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-631-D-BK, 2023 WL 2504912, at *4 (N.D. Tex. Feb. 13, 2023) (same), *rec. adopted*, 2023 WL 2518840 (N.D. Tex. Mar. 14, 2023)**.**

Brown has not argued that substantial evidence did not support the ALJ's step two determination. Therefore, because the ALJ found at step two that Brown's non-severe mental impairments did not cause "more than a minimal limitation in the claimant's ability to do basic work activities," there was no error in not considering them in the RFC determination. *Jeansonne*, 855 F. App'x at 197-98; Tr. 24.

### IV.   CONCLUSION

Because the ALJ employed proper legal standards and substantial evidence in the record supports his conclusions, Judge O'Connor should **AFFIRM** the Commissioner's decision.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district

court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on May 1, 2024.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE